

FILED

Apr 04 2018, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Mark D. Gerth
Sarah A. Hurdle
Kightlinger & Gray, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Robert D. MacGill
Charles P. Edwards
Alexander P. Orlowski
Leah L. Seigel
Barnes & Thornburg, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Professional Billing, Inc.,

*Appellant-Defendant,*

v.

Zotec Partners, LLC, and
Medical Management
Professionals, LLC,

*Appellees-Plaintiffs*

April 4, 2018

Court of Appeals Case No.
49A02-1709-PL-2219

Appeal from the Marion Superior
Court

The Honorable Heather A. Welch,
Judge

Trial Court Cause No.
49D01-1612-PL-44334

**Baker, Judge.**

[1]     Professional Billing, Inc. (PBI), brings an interlocutory appeal from the trial court's denial of its motion to dismiss the claims filed against it by Zotec Partners, LLC, and Medical Management Professionals, LLC (collectively, Zotec). PBI argues that dismissal is warranted because the trial court lacks personal jurisdiction over it. Zotec argues that the trial court should be affirmed; it alternatively requests additional time to conduct discovery. Finding that Indiana cannot assert personal jurisdiction over PBI and that additional time for discovery is unwarranted, we reverse and remand with instructions for the trial court to dismiss Zotec's claims against PBI.

## Facts

[2]     Zotec is a medical billing company with its principal place of business in Carmel. In 2013, Zotec acquired a competitor, and as part of the acquisition, Zotec agreed to retain the competitor's CEO, G. Darrell Hulsey, who became an executive at Zotec. Hulsey's employment agreement with Zotec included a non-compete provision that would last for two and one-half years after any termination of Hulsey's employment. In February 2014, Hulsey resigned from Zotec. In September 2016, he became PBI's CEO and purchased an ownership stake in the company.

[3]     PBI is a medical billing company incorporated and headquartered in Alabama. It has offices in Alabama, Louisiana, Mississippi, and Ohio. It is not registered to do business in Indiana. It has no offices, real estate, employees, or customers in Indiana. It has no contracts with anyone in Indiana.

On December 19, 2016, Zotec filed a complaint against PBI, Hulsey, and another company.[1] On February 16, 2017, PBI filed its first motion to dismiss for lack of personal jurisdiction. On March 17, 2017, Zotec filed an amended complaint against PBI, alleging that PBI violated Indiana's Uniform Trade Secrets Act and committed tortious interference with contract. Specifically, Zotec alleged that PBI misappropriated Zotec's trade secrets by obtaining them from Hulsey, knowing that Hulsey obtained Zotec's trade secrets through improper means, and by using them to compete with Zotec. Zotec further alleged that PBI targeted and induced certain Zotec customers to terminate their contractual relationships with Zotec. Zotec did not allege that PBI solicited Zotec's customers in Indiana.

On April 6, 2017, in response to Zotec's amended complaint, PBI filed a second motion to dismiss Zotec's claims against it for lack of personal jurisdiction. In support of its motion to dismiss, PBI submitted an affidavit from Douglas Bush, PBI's president and CFO. In his affidavit, Bush stated that PBI is incorporated and headquartered in Alabama; that it has offices in Alabama, Louisiana, Mississippi, and Ohio; and that PBI has never had or solicited customers in Indiana, owned or leased offices or real estate in Indiana, employed anyone in Indiana, entered into contracts with anyone in Indiana, or registered to do business in Indiana. Bush further stated that PBI had no communication with Hulsey while he was employed by Zotec and that it was not until May 2016—

[1] Neither Hulsey nor the other company are parties to this appeal.

more than two years after Hulsey had left Zotec—that PBI initiated conversations with Hulsey about joining PBI. Bush also stated that he and Hulsey are friends and that any conversations between them before May 2016 were purely social and were undertaken by Bush as an individual, not as a representative of PBI.

[6] On May 1, 2017, Zotec opposed PBI's motion to dismiss, arguing that PBI did not meet its burden to prove a lack of personal jurisdiction, or, alternatively, that Zotec should be granted additional time "to obtain the discovery it has been seeking from Hulsey for almost four months and, if necessary, obtain jurisdictional discovery directly from PBI." Appellant's App. Vol. II p. 108.

[7] On May 22, 2017, a hearing regarding the motion to dismiss took place. On June 27, 2017, the trial court denied PBI's motion, making the following findings of fact:

> 25. Presently, Hulsey is an owner and the Chief Executive Officer of PBI. PBI offers medical billing and technology solutions to physicians and other healthcare providers in competition with Zotec.
>
> 26. PBI is a competitor of Zotec whom Zotec believes has recently begun activity soliciting Zotec's customers.
>
> 27. Hulsey is personally soliciting Zotec's customers on behalf of PBI through his knowledge of Zotec's Confidential Information and trade secrets. Because of his role at Zotec . . . Hulsey is keenly aware of Zotec's trade secrets, . . . Zotec's proprietary software and confidential business practices, and which clients are most receptive to transitioning to PBI.

28. As a result of Defendants' actions, Zotec has incurred significant damages, including lost clients.

Appealed Order p. 5. The trial court then made the following conclusions of law:

> . . . the Court cannot but find that the facts of the case as alleged provide this Court with specific personal jurisdiction over PBI in this matter. The allegations against PBI are violations of Indiana's Trade Secret Act and tortious interference with contract. . . . [T]he allegations on the face of the complaint argue that Hulsey was acting intentionally and tortuously [sic] when [he] left Zotec to join a competitor, knowing that disclosure of Zotec's trade secrets would constitute harm to Zotec. The express aim at the State of Indiana arises out of the alleged harms. The Indiana Trade Secret Act is a statutory protection given to persons and companies that conduct business in the State of Indiana. While other states have similar trade secret acts, Indiana's Act was created by the legislative action of the Indiana General Assembly for the benefit of those citizens and domiciled companies that wish to conduct business. Committing an act which directly implicates this statute directly involves Indiana in the alleged tortious conduct. Essentially, the alleged misappropriation involves taking/copying a protectable interest from an Indiana company and disseminating it. Even if Hulsey was not an agent of PBI when the alleged misappropriation took place, PBI placed Hulsey as an executive within the company, giving him significant control of the company's operations. This dovetails with Zotec's allegation of tortious interference with contract regarding Zotec customers. Even if PBI had never made contact with Indiana prior to hiring Hulsey, the allegations surrounding Hulsey's conduct and PBI's involvement subject PBI to jurisdiction in this Court by way of specific personal jurisdiction.

Appealed Order p. 9-10. PBI now brings this interlocutory appeal.

# Discussion and Decision

PBI argues that the trial court erred by finding that PBI is subject to Indiana's jurisdiction through specific personal jurisdiction. Zotec requests additional time to conduct discovery if this Court finds in favor of PBI.

# I. Standard of Review

Indiana Trial Rule 12(B)(2) allows for a dismissal of a complaint if there is a lack of personal jurisdiction. Our standard of review regarding a defense of lack of personal jurisdiction is well established:

> Personal jurisdiction presents a question of law we review de novo. But whether personal jurisdiction exists can depend upon factual determinations concerning a defendant's contacts with the forum state—in which case the challenger bears the burden of disproving personal jurisdiction. Accordingly, when the trial court issues findings of jurisdictional facts (as it did here), we review those findings for clear error. In so doing, we consider whether the evidence supports the findings and whether the findings support the judgment. We will reverse the trial court's factual findings only when the record contains no facts to support them either directly or indirectly.

*Boyer v. Smith*, 42 N.E.3d 505, 508-09 (Ind. 2015) (internal citations omitted).

# II. Specific Personal Jurisdiction

Our Supreme Court has explained personal jurisdiction as follows:

Personal jurisdiction refers to a court's power to impose judgment on a particular defendant. In Indiana, personal jurisdiction analysis begins with Indiana Trial Rule 4.4(A), which sets out examples of activities that often support jurisdiction. It also provides that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States."

. . . [B]efore an Indiana court can properly assert personal jurisdiction over a defendant, the Due Process Clause of the Fourteenth Amendment mandates that the defendant have "certain minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Minimum contacts include acts defendants themselves initiate within or without the forum state that create a substantial connection with the forum state itself.

. . . . To state this another way, due process requires that potential out-of-state defendants be able to predict what conduct might make them liable in our courts. . . . Consistent with this longstanding precedent, Indiana courts will employ caution and exert potentially coercive legal authority only over a defendant who has the requisite minimum contacts to Indiana.

. . . . Specific jurisdiction exists when a lawsuit arises from or is closely related to a defendant's minimum contacts with or substantial connection to the forum state. Specific jurisdiction also requires purposeful availment—meaning a defendant invoked her contacts or connection with Indiana, and therefore should have reasonably anticipated being called into court to answer for her actions.

*Id.* at 509-10 (footnote omitted) (internal citations omitted) (quoting

*LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006)).

In *Walden v. Fiore*, — U.S. —, 134 S.Ct. 1115 (2014), the United States Supreme Court provided further guidance for determining whether minimum contacts exist for specific jurisdiction. The Court stressed that the inquiry into whether a forum state "may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Id.* at 1121 (internal quotation marks and citation omitted). For a state's exercise of jurisdiction to comport with due process, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* "[T]he relationship must arise out of contacts that the defendant *himself* creates with" the forum state. *Id.* at 1122 (internal quotation marks and citation omitted) (emphasis original). The "minimum contacts" analysis looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there. *Id.*

The *Walden* Court further explained that

> . . . the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him. To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction. Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, . . .

*Id.* at 1122-23 (internal citations omitted).

[13] Our Supreme Court incorporated the federal clarifications into Indiana law, finding that "a *substantial* connection to Indiana is the touchstone, because that is the only way defendants can reasonably anticipate being called into court here to defend themselves." *Boyer*, 42 N.E.3d at 511 (emphasis original). We must now determine whether PBI's own suit-related conduct created minimum contacts and a substantial connection between itself and Indiana such that it should reasonably anticipate being called into our courts.

[14] In its amended complaint, Zotec alleged that PBI hired Hulsey after Hulsey resigned from Zotec and that PBI has begun to solicit Zotec's customers using confidential information and trade secrets that Hulsey misappropriated from Zotec. But Zotec made no allegations that Hulsey was an employee or agent of PBI when he misappropriated Zotec's trade secrets, that PBI conspired with Hulsey during Hulsey's employment with Zotec, that PBI solicited any of Zotec's customers located in Indiana, or that PBI made any use of the confidential information or trade secrets in Indiana. Douglas Bush's affidavit that PBI submitted with its motion to dismiss stated that PBI has never had or solicited customers in Indiana, owned or leased offices or real estate in Indiana, employed anyone in Indiana, entered into contracts with anyone in Indiana, or registered to do business in Indiana. Bush also stated that PBI had no communication with Hulsey while he was employed by Zotec and that it was not until May 2016 that PBI initiated conversations with Hulsey about joining PBI. Zotec submitted no evidence to rebut Bush's affidavit statements.

[15]    Without question, then, PBI has proved the trial court's lack of personal jurisdiction. The record shows that PBI has had no contact with Indiana whatsoever, let alone sufficient minimum contacts or a substantial connection with Indiana. PBI cannot be said to have purposely availed itself of the trial court's jurisdiction. *See Simek v. Nolan*, 64 N.E.3d 1237, 1243 (Ind. Ct. App. 2016) (finding that Indiana lacked specific jurisdiction over defendant who had no contact with Indiana; who had never been to Indiana; who never owned, operated, or conducted any business in Indiana; and who did not personally initiate, expect, or encourage contacts with Indiana such that she could have reasonably foreseen being haled into court here).

[16]    Moreover, PBI's sole connection to Indiana is through its employment of Hulsey. Zotec suggests that Hulsey's significant role in PBI matters to our analysis, asserting that PBI minimizes its "relationship with Hulsey—its part owner and CEO—whose direct conduct indisputably subjects PBI and Hulsey to personal jurisdiction here," appellee's br. p. 19, and that Hulsey "*is* PBI," *id.* at 22 (emphasis original). But PBI is a separate legal entity from Hulsey, regardless of his role in the corporation and regardless of how intertwined the two may be. *See Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1231-32 (Ind. 1994) ("[A] corporation is a legal entity separate and distinct from its shareholders and officers."). Accordingly, Indiana's jurisdiction over Hulsey, which is not contested in this appeal, does not necessarily also grant Indiana jurisdiction over PBI. Their separate identities make Hulsey a third party to PBI's ostensible relationship with Indiana. And "'a defendant's relationship

with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.'" *Boyer*, 42 N.E.3d at 511 (quoting *Walden*, 134 S.Ct. at 1123). PBI and Hulsey are not one and the same, and if PBI did not have a relationship with Hulsey, it would have no alleged contacts with Indiana.

[17] Zotec further argues that Indiana has personal jurisdiction over PBI because PBI acquired and used stolen information from Indiana "specifically knowing the effects of its actions would cause harm in Indiana." Appellee's Br. p. 18. The trial court similarly found that PBI's "express aim at the State of Indiana arises out of the alleged harms." Appealed Order p. 5. In *Walden*, however, the United States Supreme Court held that "mere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Walden*, 134 S.Ct. at 1125 (finding that the petitioner's actions in one state did not create sufficient contacts with another state "simply because he allegedly directed his conduct at plaintiffs whom he knew" had connections in the other state). The harm or injury Zotec suffered does not connect PBI to Indiana in a meaningful way.

[18] In sum, the record does not show that PBI has had any contact with Indiana. PBI did not create sufficient minimum contacts or a substantial connection between itself and Indiana. Accordingly, Indiana cannot assert specific personal jurisdiction over PBI, and the trial court should have granted its motion to dismiss.

# III. Discovery

[19] Because we find that Indiana cannot exercise jurisdiction over PBI, we must now consider Zotec's request that, rather than outright dismiss its claims, we remand this matter so that Zotec can conduct jurisdictional discovery.

[20] Indiana Trial Rule 26(B)(1) permits discovery into "any matter, not privileged, which is relevant to the subject-matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party." Because Indiana's trial rule on discovery is adopted from the Federal Rules of Civil Procedure, *see Am. Bldgs. Co. v. Kokomo Grain Co.*, 506 N.E.2d 56, 59 (Ind. Ct. App. 1987), we may consider federal court interpretations when applying the Indiana rule. *Goldberg v. Farno*, 953 N.E.2d 1244, 1252 (Ind. Ct. App. 2011) ("When an Indiana Trial Rule is based on a corresponding Federal Rule of Civil Procedure, it is appropriate for our courts to look at federal court interpretations when applying the Indiana rule.").

[21] "It is well established that a [trial court] has the power to require a defendant to respond to discovery requests relevant to his or her motion to dismiss for lack of jurisdiction." *Andersen v. Sportmart, Inc.*, 179 F.R.D. 236, 241 (N.D. Ind. 1998) (citation omitted). "As a general matter, discovery under the Federal Rules of Civil Procedure should be freely permitted, and this is no less true when discovery is directed to personal jurisdiction." *Id.* A trial court risks erring "by not allowing some limited discovery into the personal jurisdiction issue." *Id.* The court further explained that

. . . it is also well established that a plaintiff does not enjoy an automatic right to discovery pertaining to personal jurisdiction in every case. A plaintiff must make a threshold or prima facie showing with some competent evidence demonstrating that personal jurisdiction *might* exist over a defendant in order to be entitled to jurisdictional discovery. For example, a plaintiff is entitled to jurisdictional discovery if he or she can show that the factual record is at least ambiguous or unclear on the jurisdiction issue.

*Id.* at 241-42 (internal citations omitted) (emphasis original).

[22]     Here, the timeline relevant to discovery is as follows:

- On December 19, 2016, Zotec filed its first complaint.
- On January 9, 2017, Zotec served discovery requests on Hulsey.
- On February 16, 2017, PBI filed its first motion to dismiss for lack of personal jurisdiction.
- On March 14, 2017, Hulsey responded to requests for production.
- On March 17, 2017, Zotec filed its amended complaint.
- On April 6, 2017, PBI filed its second motion to dismiss in response to Zotec's amended complaint.
- On May 1, 2017, Zotec filed its motion in opposition to PBI's motion to dismiss.
- On May 5, 2017, Zotec filed a motion to compel against Hulsey.
- On May 22, 2017, a hearing regarding PBI's motion to dismiss took place.

At no point before the May 22, 2017, hearing did Zotec serve discovery on PBI, nor did it request any depositions of PBI representatives.

[23]     Since PBI filed its motion to dismiss, Zotec has asked for more time to conduct discovery. In Zotec's motion opposing PBI's motion to dismiss, Zotec asked

the trial court for more time to obtain discovery from Hulsey "and, if necessary, obtain jurisdictional discovery directly from PBI" if the trial court did not deny PBI's motion. Appellant's App. Vol. II p. 108. In Zotec's motion opposing PBI's motion for interlocutory appeal, Zotec argued that it had not yet had the opportunity to conduct jurisdictional discovery on PBI and that, before the motion was granted, Zotec should first be allowed to discover PBI's contacts with Indiana, including by deposing Douglas Bush. While we acknowledge the short timeline of the initial stages of this case—not even six months passed from the time of Zotec's initial complaint to the time of the hearing on PBI's motion to dismiss—we must also acknowledge that Zotec had time to serve discovery requests on Hulsey during this time. The record and Zotec's briefs are devoid of reasons why Zotec did not also conduct jurisdictional discovery—or any discovery—on PBI before the hearing even though it had time to do so.

[24] Approximately three months passed between when PBI filed its first motion to dismiss for lack of personal jurisdiction and the hearing on the motion. As PBI points out, if Zotec needed additional time to conduct discovery that it deemed necessary to oppose PBI's motion, it could have requested a continuance of the hearing to enable it to do so. *See Azhar v. Town of Fishers*, 744 N.E.2d 947, 951 (Ind. Ct. App. 2001) (noting that the approximately three months between the filing of a motion to dismiss and the hearing thereon was ample time to allow the party to file a motion for additional time to conduct discovery to ascertain the evidence in opposition to the motion). Zotec made no such request.

[25] Zotec's arguments to the trial court and this Court suggest that it hoped to collect the necessary evidence from Hulsey. As discussed above, however, PBI and Hulsey are two separate entities, and in this case, they are represented by separate counsel. Moreover, most of the claims Zotec asserted against Hulsey relate to Hulsey's interactions with other entities that are not parties to this appeal and are wholly unrelated to PBI; therefore, Hulsey's interests do not fully align with PBI's. Zotec offers no reason why it did not seek discovery from PBI at the same time as when it sought discovery from Hulsey. Its argument that it should be able to do so now is unavailing.

[26] Further, Zotec failed to make a prima facie showing with some competent evidence demonstrating that personal jurisdiction might exist over PBI. As discussed above, Zotec showed that PBI's connection to Indiana is solely through Hulsey, a third party. Zotec designated no evidence suggesting that jurisdiction over PBI might exist, nor did it show that the factual record is at least ambiguous or unclear on the jurisdiction issue. Simply put, Zotec did not meet its burden. We therefore deny Zotec's request for additional time to complete jurisdictional discovery.

[27] The judgment of the trial court is reversed and remanded with instructions to dismiss Zotec's claims against PBI.

Riley, J., and Brown, J., concur.