


FILED

Nov 06 2025, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Cantor Fitzgerald, L.P. and Tower Bridge International
Services, L.P.,

*Appellants-Plaintiffs*

v.

Federal Insurance Company, U.S. Specialty Insurance
Company, Liberty Mutual Insurance Company, and National
Union Fire Insurance Company of Pittsburgh, PA,

*Appellees-Defendants*

---

November 6, 2025

Court of Appeals Case No.
25A-PL-1067

Appeal from the Marion Superior Court

The Honorable Christina R. Klineman, Judge

Trial Court Cause No.
49D01-2408-PL-39657

---

**Opinion by Judge Bailey**
Judges Tavitas and Kenworthy concur.

**Bailey, Judge.**

# Case Summary

Cantor Fitzgerald, L.P. ("Cantor Fitzgerald") and Tower Bridge International Services, L.P. ("Tower Bridge") (collectively, "Cantor") filed a complaint against Federal Insurance Company ("Federal"). Cantor also named as defendants U.S. Specialty Insurance Company ("U.S. Specialty"), Liberty Mutual Insurance Company ("Liberty Mutual"), and National Union Fire Insurance Company of Pittsburgh, PA ("National Union") (collectively, "the Nonresident Defendants"). The Nonresident Defendants filed a joint motion to dismiss the complaint for lack of personal jurisdiction, which motion the trial court granted. Cantor now appeals. We affirm.

# Facts and Procedural History

The following facts are taken from Cantor's complaint. Cantor Fitzgerald is a limited partnership organized under the laws of Delaware and with a principal place of business in New York. Tower Bridge is a limited partnership organized under the laws of England, with a principal place of business in London.

Federal is an insurance company organized under the laws of Indiana with its principal place of business in New Jersey. U.S. Specialty is an insurance company organized under the laws of Texas with a principal place of business in Texas. Liberty Mutual is organized under the laws of Massachusetts, with a principal place of business there. And National Union is organized under the

laws of Pennsylvania, with its principal place of business in New York. All four insurance companies are authorized to conduct insurance business in Indiana.

[4] Federal and the Nonresident Defendants (collectively, "the Defendants") issued a bond to Cantor Fitzgerald, which covered Tower Bridge among several other entities,[1] for the period of April 27, 2020, to April 27, 2021. The bond had a single-loss limit of $25 million. The bond covered "[l]oss resulting directly from dishonest or fraudulent acts committed by an Employee acting alone or in collusion with others." Appellants' App. Vol. 2 at 68. Each of the Defendants agreed to underwrite a portion of the bond, with Federal underwriting $10 million, and the Nonresident Defendants each underwriting $5 million.

[5] According to Cantor, a former employee of Tower Bridge and a former employee of a partner group "perpetrated a substantial fraud" against Cantor and diverted more than $30 million from Cantor to themselves. *Id*. at 29. On December 21, 2020, Cantor notified the Defendants about a potential claim under the bond. Ultimately, in May 2024, the Defendants declined to pay the full amount of the claim.

[6] Cantor filed a complaint against the Defendants for breach of contract, unjust enrichment, breach of the duty of good faith and fair dealing, and promissory estoppel, and Cantor sought declaratory judgments. Cantor alleged that the

---

[1] Tower Bridge is covered under the bond because it is more than fifty percent owned by Cantor Fitzgerald or a partner group.

court had personal jurisdiction in this action because Federal "is incorporated in Indiana," the Defendants are "authorized to conduct business in Indiana," and the Defendants "issued or delivered contracts of insurance to residents of Indiana[.]" *Id*. at 26. Cantor also alleged that "this action concerns a contract between and among" Federal, "a resident of Indiana"; Cantor; and the Nonresident Defendants. *Id*. As such, Cantor asserted that the court had personal jurisdiction over the Defendants pursuant to Indiana Code Section 27-1-17-4(7) (the "Admittance Statute"), which requires a foreign insurance company to file an application with the Indiana Department of Insurance and execute a power of attorney appointing an agent for service of process.

[7] The Nonresident Defendants filed a motion to dismiss for lack of personal jurisdiction pursuant to Indiana Trial Rule 12(B)(2). They contended that they "have no connection to Indiana, other than the unremarkable fact that they are licensed to do business here." Appellants' App. Vol. 2 at 117. And the Nonresident Defendants alleged that, while the Admittance Statute "brings insurance companies within the jurisdiction of the state for actions arising out of contracts made within the state or with residents of the state," the contract here "was made in New York, not Indiana, and neither Plaintiff resides in Indiana." *Id*. at 117-18. The Nonresident Defendants also contended that there was no specific jurisdiction under the federal Due Process Clause because there were no minimum contacts with Indiana. Specifically, the Nonresident Defendants maintained that none of them are citizens of, headquartered in, or

have their principal place of business in Indiana and the bond was not issued or entered into in Indiana but in New York.

[8] Cantor filed a brief in opposition to the motion to dismiss and alleged that the Nonresident Defendants "consented to personal jurisdiction in Indiana" under the Admittance Statute. *Id*. at 141. Cantor argued that this dispute involves an action arising out of a contract made with a resident of Indiana because Federal, an Indiana resident, "is a party to the contract on which this claim is based." *Id*. at 143. Cantor then argued that, Admittance Statute aside, specific jurisdiction exists because the Nonresident Defendants "decided to band together with an Indiana insurer[,]" which "created ongoing obligations to a resident of this state" and amounted to the necessary "minimum contacts" required for personal jurisdiction under the Due Process Clause. *Id*. at 147. In the alternative, Cantor asked for "jurisdictional discovery." *Id*. at 150.

[9] Following a hearing at which the parties presented oral argument, the trial court issued its order. As for Cantor's statutory argument, the court determined that the "mere existence of the small connection to the state that is Federal's incorporation is insufficient to extend personal jurisdiction pursuant to" the Admittance Statute. *Id.* at 17. As such, the court found that "Indiana Code § 27-1-17-4(7) does not confer jurisdiction over" the Nonresident Defendants. *Id*. Regarding Cantor's common-law argument, the court found that "the only contact with the out of state party is the fact that Federal is incorporated in Indiana. Plaintiffs have not alleged any other contacts with the state of Indiana that would lend credence to the finding of specific jurisdiction." *Id*. at 18-19.

Accordingly, the court found that "specific jurisdiction over the [Nonresident Defendants] would thus be inconsistent with Trial Rule 4.4(a) and the federal Due Process Clause." *Id*. at 19. The court then granted the Nonresident Defendants' motion to dismiss.[2] This appeal ensued.

## Discussion and Decision

[10] Cantor contends that the trial court erred when it granted the Nonresident Defendants' motion to dismiss for lack of personal jurisdiction. Personal jurisdiction refers to a court's "power to impose judgment on a particular defendant." *Boyer v. Smith*, 42 N.E.3d 505, 509 (Ind. 2015). As our Supreme Court has stated:

> Personal jurisdiction presents a question of law we review de novo. But whether personal jurisdiction exists can depend upon factual determinations concerning a defendant's contacts with the forum state—in which case the challenger bears the burden of disproving personal jurisdiction. Accordingly, when the trial court issues findings of jurisdictional facts (as it did here), we review those findings for clear error. In so doing, we consider whether the evidence supports the findings and whether the findings support the judgment. We will reverse the trial court's factual findings only when the record contains no facts to support them either directly or indirectly.

---

[2] The court then ordered that there is no just reason for delay and expressly directed the entry of judgment in favor of the Nonresident Defendants.

*Id.* at 508-09 (citations omitted). Cantor argues that the court erred when it granted the Nonresident Defendants' motion to dismiss because the Nonresident Defendants consented to personal jurisdiction in Indiana pursuant to the Admittance Statute and because personal jurisdiction is consistent with the federal Due Process Clause. In the alternative, Cantor asks that we remand this matter for jurisdictional discovery. We address each argument in turn.

## Admittance Statute

Cantor first asserts that the Nonresident Defendants consented to personal jurisdiction in Indiana pursuant to the Admittance Statute. That statute provides that, in order for a foreign insurance company to be admitted to do insurance business in Indiana, it shall, in pertinent part, provide the Department of Insurance with a

> duly executed power of attorney in a form prescribed by the department which constitutes and appoints an individual or a corporate resident of Indiana, or an authorized Indiana insurer, as the insurance company's agent, its true and lawful attorney upon whom . . . all lawful processes in any action in law or in equity against it shall be served.

Ind. Code § 27-1-17-4(7).

Cantor maintains that the purpose of the statute is "to force insurers to consent to suit" within a state's borders "if they wanted to sell insurance there." Appellants' Br. at 17. Cantor maintains that the act of applying under the Admittance Statute constitutes "a commitment by any complying foreign

insurer, like the [Nonresident Defendants], to consent to jurisdiction within the state[.]" *Id.* at 25. However, our appellate courts have twice addressed this issue and reached a contrary result: first, in *General American Life Insurance Co. v. Carter*, 54 N.E.2d 944 (Ind. 1944), and, more recently, in *Tom James Co. v. Zurich American Insurance Co.*, 221 N.E.3d 1261 (Ind. Ct. App. 2023), *trans. denied*.

[13] In *Carter*, Carter was a resident of Mississippi and a beneficiary of an insurance policy issued by General American Life Insurance Co. ("General American"). General American was a Missouri corporation with its principal place of business in Missouri. General American was authorized to do business in Indiana after it complied with a precursor to the Admittance Statute[3] by "executing and delivering a power of attorney authorizing service upon the Commissioner of Insurance as its attorney-in-fact[.]" *Carter*, 54 N.E.2d at 946. Carter's deceased sister, who had obtained the insurance policy, had been a resident of Mississippi. And the contract was made by mail through an organization out of Colorado, with the application having been mailed from Mississippi to Denver and then to Missouri.

[14] Carter sued General American and contended that General American had subjected itself to personal jurisdiction in Indiana by having provided an agent

---

[3] The precursor statute contained substantially similar language to the Admittance Statute.

for service of process in order to do business in Indiana. Our Supreme Court held:

> The execution of the power of attorney in conformity to the statute constitutes a contract by which the insurance company agreed to be bound, and this contract cannot be construed to include cases beyond the purview of the agreement and the intent of the parties. *It must be assumed that the statute was enacted with the purpose of serving some interest of the state or its inhabitants.* There could be no possible interest in the importation of actions entered into in other jurisdictions between the insurance company and nonresidents of the state. *It is reasonable to conclude that the intent and design was to bring the insurance company within the jurisdiction of the courts of the state for the purpose of actions arising out of contracts made within the state or with residents of the state.*

*Id.* at 947 (emphases added). Accordingly, the Court found that General American had not consented to personal jurisdiction in Indiana simply by complying with the statute and providing the name of an agent for service of process.

[15] Similarly, in *Tom James*, Tom James Company ("Tom James") and its subsidiaries entered into an insurance contract with Zurich American Insurance Company ("Zurich"). Tom James is a worldwide company incorporated and headquartered in Tennessee, with an executive office in Indianapolis. None of its subsidiaries are located or incorporated in Indiana. Zurich is incorporated in New York with a principal place of business in Illinois. It issues insurance policies to customers across the United States, including Indiana. Pursuant to

the Admittance Statute, Zurich had executed a power of attorney appointing an Indiana agent for service of process.

[16] Following the COVID-19 pandemic, Tom James sought a declaratory judgment in Indiana regarding the scope of its insurance policy. On Zurich's motion, the trial court dismissed the cause for lack of personal jurisdiction. On appeal, Tom James asserted that compliance with the Admittance Statute "operate[d] as a consent to jurisdiction even as to insurance contracts that are not made within Indiana or with residents of Indiana." 221 N.E.3d at 1271. This Court relied on our Supreme Court's analysis and holding in *Carter* and held that, "since the insurance contract at issue in this case was not made within the state or with residents of the state, Zurich did not consent to jurisdiction in this case by registering an agent in compliance with" the Admittance Statute. *Id*. at 1272.

[17] Here, there is no dispute that neither Cantor Fitzgerald nor Tower Bridge is an Indiana resident. Indeed, Cantor Fitzgerald is organized under the laws of Delaware with a principal place of business in New York, and Tower Bridge is organized and headquartered in England. There is also no dispute that none of the Nonresident Defendants are headquartered in or have a principal place of business in Indiana. The only connection between the Nonresident Defendants and Indiana is that each Nonresident Defendant named a registered agent for service of process in order to be admitted to do business here. However, under our Supreme Court's holding in *Carter* and our Court's holding in *Tom James*, it is clear that simply having named an agent for service of process pursuant to the

Admittance Statute does not constitute consent to personal jurisdiction.[4] Rather, the Admittance Statute "clearly applies only to 'actions arising out of contracts made within the state or with residents of the state.'" *Tom James*, 221 N.E.3d at 1272 (quoting *Carter*, 54 N.E.2d at 947).

[18] Cantor contends that the Nonresident Defendants availed themselves of personal jurisdiction because the bond was a contract made with a resident of Indiana, namely, Federal. Cantor contends that "three foreign insurers contracted with an Indiana insurer to bear the risk of a multinational company for a set premium." Appellants' Br. at 28. Stated differently, Cantor contends that the Nonresident Defendants had made a contract with a resident of Indiana when they each agreed to underwrite a portion of the same bond that Federal agreed to underwrite. We cannot agree.

[19] Here, again, four insurance companies agreed to underwrite a portion of the same bond for Cantor. Federal, an insurance company incorporated in Indiana, agreed to underwrite $10 million while each of the three Nonresident Defendants agreed to underwrite $5 million. However, the mere fact that the Nonresident Defendants underwrote portions of the same bond does not

---

[4] Cantor relies on the Unites States Supreme Court's opinion in *Mallory v. Norfolk Southern Railway Co.*, 600 U.S 122, 134-36 (2023), to support the contention that "courts have interpreted statutes akin to Indiana Code § 27-1-17-4(7) as consent to personal jurisdiction[.]" Appellants' Br. at 17. However, the Pennsylvania statute at issue in *Mallory* was "explicit that 'qualification as a foreign corporation' shall permit state courts to 'exercise general personal jurisdiction' over a registered foreign corporation[.]" 600 U.S. at 134 (quoting 42 Pa. Cons. Stat. § 5301(a)(2)(i)). Thus, the Pennsylvania statute made it clear that, by registering to do business in that state, a business was consenting to personal jurisdiction. Similar language is notably absent from the Admittance Statute, and any opinion interpreting the Pennsylvania statute has no relevance to the Admittance Statute.

constitute a "contract with" Federal. While the bond is one document, it is clear that the bond constitutes separate contracts: a contract between Federal and Cantor to cover $10 million, a contract between U.S. Specialty and Cantor to cover $5 million; a contract between Liberty Mutual and Cantor to cover $5 million, and a contract between National Union and Cantor to cover $5 million.

[20] Indeed, Cantor does not direct us to any provision of the bond that would form any sort of contractual relationship between Federal and any of the Nonresident Defendants. And we agree with the trial court that "the insurers have created independent obligations for themselves that are not dependent on the contributions of other insurers[.]" Appellants' App. Vol. 2 at 182. For example, the bond provides that "[e]ach of said Companies shall be liable only for such proportion of any Single Loss under the attached bond as the amount underwritten by such Company . . . but in no event shall any of said Companies be liable for an amount greater than that underwritten by it." Appellants' App. Vol. 2 at 108. Further, in the event the bond is terminated or cancelled as to any company, that company "alone shall be liable to the Insured for any return premium due the Insured" and the cancellations as to one company "shall not terminate, cancel or otherwise affect the liability of the other Companies" under the bond. *Id.* at 109. Stated differently, each insurance company has obligations to Cantor that are separate and distinct from the obligations of the other insurance companies to Cantor. Because the bond is not a contract between Federal and the Nonresident Defendants, the lawsuit between Cantor and the

Nonresident Defendants is not an action arising out of a contract made with a resident of the state.

[21] The Nonresident Defendants did not consent to personal jurisdiction in Indiana simply by having provided an agent for service of process under the Admittance Statute and having entered into a bond that was underwritten by multiple insurance companies, only one of which is incorporated in Indiana. The trial court did not err when it concluded that the Nonresident Defendants did not consent to personal jurisdiction pursuant to the Admittance Statute.

## Due Process

[22] We next turn to Cantor's argument that, even if the Nonresident Defendants did not consent to personal jurisdiction, they are nonetheless subject to Indiana's jurisdiction through specific personal jurisdiction. Our analysis begins with Indiana Trial Rule 4.4(A), which discusses activities that may support jurisdiction. Our Supreme Court has interpreted the "catch all" provision of that rule as reducing the "'analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the federal Due Process Clause.'" *Boyer,* 42 N.E.3d at 509 (quoting *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006)).

> More specifically, before an Indiana court can properly assert personal jurisdiction over a defendant, the Due Process Clause of the Fourteenth Amendment mandates that the defendant have "certain minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Minimum contacts include acts

defendants themselves initiate within or without the forum state that create a substantial connection with the forum state itself.

The "minimum contacts" test of *International Shoe* [*Co. v. Washington*, 326 U.S. 310 (1945)] and its progeny ensures that a defendant's contacts with Indiana make an Indiana court's exercise of personal jurisdiction fair and just. To state this another way, due process requires that potential out-of-state defendants be able to predict what conduct might make them liable in our courts. "The Due Process Clause . . . gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." Consistent with this longstanding precedent, Indiana courts will employ caution and exert potentially coercive legal authority only over a defendant who has the requisite minimum contacts to Indiana.

*Id.* (citations omitted).

[23] This "minimum contacts" analysis for personal jurisdiction involves two concepts: general jurisdiction and specific jurisdiction. *In re Estate of Baker*, 837 N.E.2d 603, 611 (Ind. Ct. App. 2005). No party challenges the court's general jurisdiction. As such, we analyze whether there is specific jurisdiction.

[24] Unlike general jurisdiction, specific jurisdiction requires not only a showing that the defendant has minimum contacts with the state but *also* that the plaintiff's claims arose out of the defendant's contacts with the forum. *See Tom James*, 221 N.E.3d at 1269.

Thus, specific jurisdiction involves a two-step analysis. First, there must be a showing that the defendant deliberately reached

out beyond its home and into the forum state by, for example, exploiting a market in the forum state or entering a contractual relationship there.

Second, even when the first step has been shown, the plaintiff's claims must also arise out of or relate to the defendant's contacts with the forum.

*Id.* (citation modified).

In other words,

there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. For this reason, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal. San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (quotation marks and citations omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's *unconnected* activities in the State." *Id.* at 264 (emphasis added); *see also Boyer*, 42 N.E.3d at 511 (holding the defendant must have "minimum contacts and connections within Indiana that create or contribute to the controversy at hand" and "arise from [the defendant's] own conduct within or directed into Indiana").

Here, even if we were to agree that any of the Nonresident Defendants reached out beyond their home and exploited the market in Indiana, Cantor failed to

demonstrate that the claims arise out of the Nonresident Defendants' contacts with Indiana. Neither Cantor Fitzgerald nor Tower Bridge are corporate citizens of Indiana, headquartered in Indiana, or with a principal place of business in Indiana. Furthermore, the bond was not entered into in Indiana. And, critically, the claims against the Nonresident Defendants have nothing to do with Indiana in particular or their contacts here but stem from Tower Bridge's former employee's alleged theft of funds while in a foreign country. *See Tom James*, 221 N.E.3d at 1270 (declining to find specific personal jurisdiction where the plaintiffs had no contacts with Indiana, the policy was not entered into in Indiana, and the claims had nothing to do with Indiana or the defendant's contacts here). Thus, there is no specific personal jurisdiction here.

## Discovery

[27]     Finally, we turn to Cantor's claims that, "absent a reversal, this Court should at least vacate the dismissal order and remand for jurisdictional discovery." Appellants' Br. at 37. Indiana Trial Rule 26(B)(1) permits discovery into "any matter, not privileged, which is relevant to the subject-matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party[.]" As this Court has stated:

> It is well established that a [trial court] has the power to require a defendant to respond to discovery requests relevant to his or her motion to dismiss for lack of jurisdiction. As a general matter, discovery . . . should be freely permitted, and this is no less true when discovery is directed to personal jurisdiction. A trial court risks erring by not allowing some limited discovery into the personal jurisdiction issue.

*Pro. Billing, Inc. v. Zotec Partners, LLC*, 99 N.E.3d 657, 663 (Ind. Ct. App. 2018) (quotation marks and citations omitted). The Court further explained that:

> "it is also well established that a plaintiff does not enjoy an automatic right to discovery pertaining to personal jurisdiction in every case. A plaintiff must make a threshold or prima facie showing with some competent evidence demonstrating that personal jurisdiction *might* exist over a defendant in order to be entitled to jurisdictional discovery. For example, a plaintiff is entitled to jurisdictional discovery if he or she can show that the factual record is at least ambiguous or unclear on the jurisdiction issue."

*Id*. (quoting *Anderson v. Sportmart, Inc.*, 179 F.R.D. 236, 241-42 (N.D. Ind. 1998)) (alteration original to *Anderson*).

[28] Here, Cantor failed to make a threshold showing with competent evidence that personal jurisdiction might exist over the Nonresident Defendants. Indeed, Cantor had over six months from the filing of its original complaint to the date the court held a hearing on the Nonresident Defendants' motion to dismiss to serve discovery requests related to the issue of personal jurisdiction. But Cantor did not issue any requests, and the record is devoid of any reason why it did not conduct any jurisdictional discovery during that time. Further, the only evidence that Cantor provided to connect the Nonresident Defendants to Indiana is that they happen to have taken a pro rata share in underwriting the same bond as an Indiana insurance company. However, as discussed above, that evidence is not sufficient to show that the record is unclear or ambiguous on the jurisdiction issue. Because Cantor had time to conduct discovery but did

not and because Cantor did not present any evidence to show that personal jurisdiction might exist, we deny their request for additional time to complete jurisdictional discovery.

## Conclusion

[29] The Nonresident Defendants did not avail themselves of personal jurisdiction in Indiana either through the Admittance Statute or their contacts with the state. And Cantor did not make a threshold showing that personal jurisdiction might exist over them. We therefore affirm the trial court's dismissal of the case as to the Nonresident Defendants for lack of personal jurisdiction, and we deny Cantor's request for more time to conduct discovery.

[30] Affirmed.

Tavitas, J., and Kenworthy, J., concur.

ATTORNEYS FOR APPELLANTS

Gregory M. Gotwald
Christopher E. Kozak
Plews Shadley Racher & Braun LLP
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

Scott A. Harkness
Katelyn H. Juerling
Norris Choplin Schroeder LLP
Indianapolis, Indiana


ATTORNEY FOR APPELLEES LIBERTY MUTUAL INSURANCE COMPANY AND U.S. SPECIALTY INSURANCE COMPANY

Kelly V. Milam
Gordon Rees Scully Mansukhani, LLP
Chicago, Illinois